[No. F018550. Fifth Dist. Sept. 22, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
RANDLE EUGENE DUNLAP, Defendant and Appellant.

[Opinion certified for partial publication.*]

**COUNSEL**

John R. Brazier, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Cynthia G. Besemer and Gelacio L. Bayani, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

THAXTER, J.—In the published portion of this opinion we hold that the trial court properly admitted a California Law Enforcement Telecommunications System (CLETS) computer printout of appellant's criminal information history (rap sheet) under the official records exception to the hearsay rule (Evid. Code, § 1280) as evidence that appellant served two prior prison terms for which his sentence in this action was enhanced. In doing so we rely on judicial notice of pertinent statutes and the presumption that official duty was regularly performed (Evid. Code, § 664).

In the unpublished portion of the opinion we reject appellant's claims of prejudicial instructional error. We will affirm the judgment based on a jury verdict convicting appellant of three felonies: second degree robbery (Pen. Code,[1] § 212.5, subd. (b)), vehicle theft (Veh. Code, § 10851, subd. (a)), and reckless driving while fleeing a peace officer (Veh. Code, § 2800.2), and one misdemeanor, willful interference with a peace officer (§ 148), and a separate verdict finding appellant served separate prison terms for two prior felony convictions (§ 667.5, subd. (b)).

FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

DISCUSSION

I., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

III. *Admission of the CLETS rap sheet as evidence appellant served prior prison terms was proper.*

The sole evidence submitted below to support the enhancement allegations was abstracts of judgment of the two prior convictions, a booking sheet, and a CLETS rap sheet.

The two abstracts of judgment were for a 1985 Kern County conviction for escape (§ 4532) and for a 1990 Riverside County conviction for possession of a gun by an ex-felon (§ 12021). The former shows that appellant was sentenced to prison on April 19, 1985, for one year and one day, with no

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.
*See footnote, *ante,* page 1468.

credit for time served; the latter shows a September 5, 1990, prison commitment for two years, with one hundred eighty-one days of credit.

The CLETS rap sheet was offered to show appellant's aliases (in order to link appellant, through various spellings of his name, to the abstracts of judgment from the prior convictions), and to demonstrate that appellant had served a separate prison term for each of the prior convictions and had not stayed free of prison custody for a five-year period (see § 667.5, subd. (b)). It consisted of a seven-page computer printout, was labeled "CLETS DATA BASE RESPONSE FOR JTC KERN COUNTY SHERIFF," and was dated August 18, 1992. The first page was stamped as follows:

"District Attorney's Office

"County of Kern Bakersfield, California

"This is to certify that the above is a true and original document received from the California Law Enforcement Telecommunications System, by the District Attorney's Discovery Unit."

Directly under the preceding paragraph were spaces for the date and a clerk's name; hand-written into these spaces was the date "8-18-92" and an illegible name or set of initials.

Appellant objected to the admissibility of the rap sheet. That objection was on the theory of lack of foundation and relied on *People* v. *Matthews* (1991) 229 Cal.App.3d 930 [280 Cal.Rptr. 134]. Later defense counsel also added as reasons for exclusion the hearsay rule and Evidence Code section 352.

"I think the whole thing could be resolved if somebody was in here to indicate the reliability of the entries in CLETS. We don't have that person. I still think this document, despite a nice stamp here in the lower right-hand corner, is still lacking in proper authentication and constitutes hearsay and should be kept out under Evidence Code 352, if for no other reason."

The court overruled appellant's hearsay and foundation objections. In response to the Evidence Code section 352 objection, the court noted that portions of the exhibit not directly relevant to the purposes for which it was offered were indeed prejudicial to appellant. The court therefore directed the prosecutor to mark those portions of the rap sheet directly relevant to the purposes for which it was offered, obtained a concession from defense counsel (with no waiver of the objection) that the marked portions were indeed relevant, and ordered the remainder of the rap sheet excised.

 ██ Appellant contends that his rap sheet was inadmissible for failure to comply with section 969b.[3] Appellant also relies on *People* v. *Matthews, supra,* 229 Cal.App.3d 930 for the proposition that ". . . other than certified prison records, only the 'record of conviction' is admissible to prove a prior conviction." (*Id.* at p. 940.)

Respondent concedes that the rap sheet does not qualify as a record described in section 969b, but argues it was nonetheless admissible as an official record under Evidence Code section 1280.

## A. *People v. Matthews*

In *People* v. *Matthews, supra,* 229 Cal.App.3d 930, the information charged that the defendant, Terrance Lewis Matthews, suffered several prior felony convictions, including one in 1984 for robbery, a serious felony within the meaning of section 667. As proof of that conviction, the prosecutor offered a certified copy of a San Francisco Superior Court record indicating that "Carl Tyrone Matthews" was convicted of robbery in that court on April 24, 1984, and two uncertified computer printouts referring to "Terry Matthews."[4] One printout was from the San Francisco Police Department, and it contained information consistent with the court record of the robbery conviction except for the name difference. The second printout was unlabeled. It contained criminal history for a subject identified as Terry Matthews, listing 12 aliases, including "Carl T. Matthews." It also referred to a robbery conviction with information consistent with the court record. (*People* v. *Matthews, supra,* 229 Cal.App.3d at p. 934.)

The prosecution presented testimony by the San Francisco Police Department Identification Bureau's custodian of records, who maintained custody of a criminal jacket which included the computer printouts. He testified they were made during the regular course of the identification bureau's business, at or near the condition or event memorialized therein. He also said he was familiar with the mode of preparation of the rap sheets but was not asked to

---

[3]Section 969b states in pertinent part: "For the purpose of establishing prima facie evidence of the fact that a person being tried for a crime . . . has been convicted of an act punishable by imprisonment . . . , and has served a term therefor in any penal institution, . . . the records or copies of records of any state penitentiary, reformatory, county jail, city jail, or federal penitentiary in which such person has been imprisoned, when such records or copies thereof have been certified by the official custodian of such records, may be introduced as such evidence."

Section 969b "is permissive and not mandatory, and it does not restrict the People from other forms of proof to establish the fact of imprisonment for a prior conviction." (*People* v. *Bradley* (1970) 3 Cal.App.3d 273, 276 [83 Cal.Rptr. 234].)

[4]The appellate court referred to the computer printouts as "state and local 'rap sheets.' " (*People* v. *Matthews, supra,* 229 Cal.App.3d at p. 935.)

and did not explain the manner in which they were prepared. Neither did he identify the sources of information on which they were based. (229 Cal.App.3d at pp. 935, 939-940.)

The defendant objected to admission of the computer printouts on hearsay and lack of foundation grounds. The trial court admitted the documents as "business records" under Evidence Code section 1271 and, relying on them, found that the defendant had suffered the 1984 robbery conviction.

The appellate court held that proper foundation had not been presented to qualify the rap sheets under either the business record or the official record exceptions to the hearsay rule. (229 Cal.App.3d at p. 940.) Because the only evidence tying the defendant (Terrance Lewis Matthews) to the robbery conviction was contained in the inadmissible computer-generated rap sheets, the court modified the judgment by striking the enhancement based on that conviction. (*Id.* at p. 941.)

In its discussion, the *Matthews* court made a statement, relied upon by appellant here, to the effect that a prior conviction may be proved *only* through the "record of conviction" or certified prison records under section 969b. If that is a correct statement of law, the computer printout of appellant's criminal history was improperly admitted because it was neither a certified prison record[5] nor part of the record of conviction.

We first note that the *Matthews* court's statement relied on by appellant appears to have been dictum. Because the court had already concluded that the rap sheets were inadmissible under any recognized exception to the hearsay rule, its statement that evidence of the "record of conviction" or compliance with section 969b is the exclusive means of proving a prior conviction seems unnecessary for the actual decision. Additionally, we do not believe the statement is supported by the authority cited by the *Matthews* court under the factual situations present there and in this case.

The only authority relied on by the *Matthews* court for its conclusion are decisions in which the question was not whether the defendant had been convicted, but whether the conviction was for conduct of a particular type. (*People* v. *Guerrero* (1988) 44 Cal.3d 343 [243 Cal.Rptr. 688, 748 P.2d 1150]; *People* v. *Castellanos* (1990) 219 Cal.App.3d 1163 [269 Cal.Rptr. 93]; *People* v. *Rhoden* (1989) 216 Cal.App.3d 1242 [265 Cal.Rptr. 355].)

In *Guerrero*, the defendant was charged with two prior serious felony convictions, both for residential burglary. The evidence submitted as proof

---

[5]CLETS is a program operated by the Department of Justice. (Gov. Code, § 15100.) Prisons are administered by the Department of Corrections. (§ 5000 et seq.)

of each prior included records of an accusatory pleading charging a residential burglary and the defendant's plea of guilty or nolo contendere. (44 Cal.3d at p. 345.) On appeal, the defendant contended the trial court erred by considering evidence beyond the judgment of conviction. The Supreme Court disagreed, holding that the trial court properly looked to "the entire record of the conviction." (*Id.* at p. 355.) In doing so, the Supreme Court overruled its earlier decision in *People* v. *Alfaro* (1986) 42 Cal.3d 627 [230 Cal.Rptr. 129, 724 P.2d 1154].

The issue decided in *Guerrero* arose because the serious felony of "burglary of a residence" as it was then described in section 1192.7 did not exist as an offense specifically so defined in the Penal Code. (44 Cal.3d at p. 346.) Because the judgment of conviction would not disclose whether the burglary was of a residence, other matters included in the "record of conviction" could be considered to determine the substance of the conviction. The Supreme Court made clear, however, that the trier of fact could not look to evidence beyond the record of conviction to relitigate the circumstances of the crime. (*Id.* at p. 355.)

In *People* v. *Castellanos, supra,* 219 Cal.App.3d 1163, the defendant was charged with four prior serious felony convictions, three for residential burglary and one for attempted residential burglary. The appellate court held that the "record of conviction" as to each prior includes "all relevant documents in the court file of the prior conviction" including the preliminary hearing transcript, if any. (*Id.* at p. 1172.)

*People* v. *Rhoden, supra,* 216 Cal.App.3d 1242, involved a prior Florida conviction. Under section 668, a conviction in a foreign jurisdiction can be used to enhance the sentence for a later California conviction if the foreign offense would have been punishable as a felony if committed within this state. The Florida conviction in *Rhoden* was for violating a statute which specified two types of conduct, one of which would be a misdemeanor in California. (216 Cal.App.3d at p. 1256.) Over defense objection, the trial court admitted a Florida commitment to custody form reciting a statement by the defendant admitting to conduct which would have constituted a felony in California. Without that evidence, the California trial court would have been unable to determine whether the Florida conviction was punishable as a felony if it had occurred in California.

The *Rhoden* appellate court, relying on *Guerrero,* concluded that the commitment to custody form was not part of the "record of conviction" and should not have been relied upon in determining the nature of the Florida conviction. Because no properly admitted evidence established that the

conduct underlying the prior conviction would have been punishable as a felony in California, the enhancement was stricken. (*People* v. *Rhoden, supra,* 216 Cal.App.3d at pp. 1256-1258.)

We see a substantial distinction between cases such as *Guerrero, Castellanos,* and *Rhoden,* where the question is the *substance* of the prior conviction (i.e., the nature of the conduct giving rise to it), and cases such as *Matthews* and this one in which the question is the *fact* of the prior conviction or the additional fact that the defendant served a prison term within the meaning of section 667.5. ■ As the Supreme Court pointed out in *Guerrero,* going beyond the record of conviction to prove its substance "threaten[s] the defendant with harm akin to double jeopardy and denial of speedy trial." (*People* v. *Guerrero, supra,* 44 Cal.3d at p. 355.) But no such danger is present when evidence other than court or prison records is used only to establish the fact of conviction and/or service of a prison term.

In our view, nothing in *Guerrero, Castellanos,* or *Rhoden* compels or logically supports the statement of the *Matthews* court that the fact of a prior conviction can be proved only by the record of conviction or certified prison records. Provided that other types of evidence (e.g., other official records) satisfy applicable rules for admissibility, they may be relied on to establish a prior conviction. (See *People* v. *Brucker* (1983) 148 Cal.App.3d 230, 241 [195 Cal.Rptr. 808].)

B. *Evidence Code section 1280*

Respondent claims the trial court properly admitted the CLETS rap sheet under the official records exception to the hearsay rule embodied in Evidence Code section 1280. The statute provides:

"Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if:

"(a) The writing was made by and within the scope of duty of a public employee;

"(b) The writing was made at or near the time of the act, condition, or event; and

"(c) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

Appellant contends that the foundational requirements of the statute were not met.

■ Although similar to the business records exception (Evid. Code, § 1271), the official records exception differs in one important respect. Evidence Code section 1271 "requires a witness to testify as to the identity of the record and its mode of preparation in every instance. In contrast, [Evidence Code] [s]ection 1280 . . . permits the court to admit an official record or report without necessarily requiring a witness to testify as to its identity and mode of preparation *if the court takes judicial notice or if sufficient independent evidence shows that the record or report was prepared in such a manner as to assure its trustworthiness*." (Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (1966 ed.) § 1280, p. 316, italics added; see *People* v. *Parker* (1992) 8 Cal.App.4th 110, 116-117 [10 Cal.Rptr.2d 38]; *People* v. *Flaxman* (1977) 74 Cal.App.3d Supp. 16, 20-23 [141 Cal.Rptr. 799].)

In addition to taking judicial notice, a court may rely on the rebuttable presumption that official duty has been regularly performed (Evid. Code, § 664) as a basis for finding that the foundational requirements of Evidence Code section 1280 are met. (See *Davenport* v. *Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 143 [7 Cal.Rptr.2d 818]; *Preis* v. *American Indemnity Co.* (1990) 220 Cal.App.3d 752, 759 [269 Cal.Rptr. 617].)

In the proceedings below, the prosecution did not present any evidence, independent of the CLETS rap sheet itself, bearing on the foundational requirements. In arguing for admissibility of the printout, the prosecutor expressly relied on Evidence Code section 1280 and the presumption of regularity in Evidence Code section 664. The court did not make any express findings that the foundational requirements were met,[6] but the findings may be inferred from the court's ruling admitting the printout. (Cf. *Levy-Zentner Co.* v. *Southern Pac. Transportation Co.* (1977) 74 Cal.App.3d 762, 784 [142 Cal.Rptr. 1] [dealing with foundational requirements of business records exception].) The question, then, is whether the implied findings are supported by matters outside the record but properly subject to judicial notice and/or the presumption that official duty was regularly performed.

■ The Legislature has enacted statutes dealing with the recording and reporting of a person's criminal history. Section 11105 requires the Department of Justice to maintain a master record of information "pertaining to the

---

[6]The court did make a finding of reliability and trustworthiness, but the finding appears to relate only to the question of the printout being an accurate reflection of information stored in the CLETS computer's database. The finding was probably unnecessary in view of Evidence Code section 1500.5 which, in effect, treats computer printouts as original documents for purposes of the best evidence rule. Appellant correctly points out that "[t]he issue is not whether the computer can be trusted to reliably duplicate the rap sheet, but, whether the content of the rap sheet is reliable and trustworthy."

identification and criminal history of any person," including information commonly found in rap sheets, and to furnish the information to various public agencies or officers, including district attorneys, "when needed in the course of their duties." (§ 11105, subds. (a), (b).) Effective July 1, 1978, the Legislature added chapter 2 to title 3 of part 4 of the Penal Code (commencing with § 13100) providing a comprehensive scheme for the recording, reporting, storage, analysis, and dissemination of criminal offender record information within this state. (Stats. 1973, ch. 992, §§ 1-2, pp. 1909-1915.) As part of that scheme, local criminal justice agencies are required to report to the Department of Justice information concerning arrests and dispositions in certain criminal cases (§§ 13150-13151.1), and detention agencies must report admissions or releases from detention facilities (§ 13152). Upon request of a criminal justice agency, the Department of Justice must provide the criminal history of a person identified by the agency. (§ 13176.)

The trial court was required to take judicial notice of those statutes. (Evid. Code, § 451, subd. (a).) Such notice is sufficient support for the court's implied finding that the first foundational requirement of Evidence Code section 1280 ("The writing was made by and within the scope of duty of a public employee") was satisfied. Appellant does not seriously contend otherwise. Instead, appellant focuses on the second and third foundational requirements.

The second of the three foundational legs for admission of an official record is that the ". . . writing was made at or near the time of the act, condition, or event." (Evid. Code, § 1280, subd. (b).) Nothing on the face of the CLETS printout indicates when the relevant information was recorded (i.e., entered into the computer), and no other evidence bearing on this question was presented.

The relevant information in the rap sheet admitted in evidence was: (1) appellant, under the name Randle Eugene Dunlap, was convicted of a felony in Kern County and sentenced to prison on April 19, 1985; (2) he was received by the Department of Corrections on April 25, 1985, and remained in custody until paroled on April 21, 1986; (3) he was returned to prison on a violation of parole on May 25, 1990; (4) he was convicted of a felony in Riverside County, again under the name Randle Eugene Dunlap, and sentenced to prison on September 5, 1990; and (5) he was paroled from prison on June 30, 1991. The information for each of those entries was required to be reported within 30 days of the event. (§§ 13151, 13152.) The presumption that official duty was regularly performed (Evid. Code, § 664) is sufficient basis for concluding that the Department of Justice had the necessary information within the 30-day period.

Nothing in the statutory provisions expressly directs the Department of Justice to record information received from reporting agencies within any particular time period. However, a duty to record the information within a short period after its receipt can be reasonably inferred. The entire statutory scheme for recording and reporting criminal offender record information was enacted in light of legislative findings and declarations, including "[t]hat policing agencies and courts require *speedy* access to information concerning all felony and selected misdemeanor arrests and final dispositions of such cases." (§ 13100, subd. (c), italics added.) Sections 13175 and 13176 require the Department of Justice to furnish information within 72 hours of a request therefor. Unless the Department of Justice records information from reporting agencies promptly, it will not be in position to furnish complete information within the 72-hour period.

In light of the statutory purpose and objective, and the 72-hour provisions in sections 13175 and 13176, we conclude that the Department of Justice had a duty to record information as to each event shown on appellant's rap sheet within a short period of its receipt from the reporting agency. The presumption that duty was regularly performed supports the trial court's implied finding that the Department of Justice recorded the information at or near the time of the recorded event.

 The final foundational requirement is that the "sources of information and method and time of preparation were such as to indicate its trustworthiness." (Evid. Code, § 1280, subd. (c).) "The trustworthiness requirement . . . is established by a showing that the written report is based upon the observations of public employees who have a *duty* to observe the facts and report and record them correctly." (*People* v. *Baeske* (1976) 58 Cal.App.3d 775, 780 [130 Cal.Rptr. 35].) "Whether the trustworthiness requirement has been met is a matter within the trial court's discretion." (*People* v. *Parker, supra,* 8 Cal.App.4th at p. 116.)

 The sources of information regarding the data shown in the CLETS printout were the Superior Courts of Kern and Riverside Counties as to the two prior convictions (§ 13151), and the Department of Justice as to the admissions and releases from state prison (§ 13152). None of the information reflects the opinions or conclusions of the reporting employees. Neither is this a case in which the official record merely reports information from a source who is not a public employee. (Cf. *People* v. *Baeske, supra,* 58 Cal.App.3d at pp. 780-781.)

While there is no direct evidence as to the method and time of preparation, we again believe the trial court could properly rely on judicial notice of the

pertinent statutes and consider the presumption that official duty was regularly performed to satisfy itself that the record was sufficiently trustworthy. The Legislature's findings and declarations in 1973, leading to the comprehensive scheme for recording and reporting criminal offender record information, included the following:

"(a) That the criminal justice agencies in this state require, for the performance of their official duties, *accurate and reasonably complete* criminal offender record information.

"..........................................

"(e) That, in order to achieve the above improvements, the recording, reporting, storage, analysis, and dissemination of criminal offender record information in this state must be made more uniform and efficient, and better controlled and coordinated." (§ 13100, italics added.)

We have no difficulty inferring from the statutes that the public employees involved in the recording or reporting of criminal offender record information in the CLETS system have a duty to employ methods ensuring a reasonable level of accuracy and reliability. Otherwise, the legislative objectives could not be met. The mere fact that all criminal justice agencies in California depend upon the system is an indication of its trustworthiness.

In addition, the printout contains information, the accuracy of which is established by other evidence. The rap sheet correctly reports data concerning the Kern County and Riverside County convictions which are shown on the court documents received in evidence, thereby reinforcing the sense of trustworthiness.

Appellant again relies on *People* v. *Matthews, supra,* 229 Cal.App.3d 930, as authority that a computer-generated rap sheet is not admissible as an official record without direct proof of the foundational requirements.

The body of the *Matthews* opinion does not indicate that the People relied on the official records exception. Instead, the People contended the rap sheet qualified under the business records exception to the hearsay rule, codified in Evidence Code section 1271. (229 Cal.App.3d at p. 939.) After concluding that the foundation for that exception was not established, the appellate court referred to the official records exception in a footnote: "We observe that the rap sheets are inadmissible as official records for the same reasons they are inadmissible as business records. Besides the absence of proper certification, the evidence fails to show the method of preparation or sources

of the information contained in the rap sheets. (*In re Shannon C.* (1986) 179 Cal.App.3d 334, 343 [].) Merely placing the information in the rap sheets does not overcome the hearsay rule without proper foundation for the records. (*Behr* v. *County of Santa Cruz* (1959) 172 Cal.App.2d 697, 706 [].) No other basis for admission of the hearsay evidence has been presented." (229 Cal.App.3d at p. 940, fn. 6.)

We do not find this statement persuasive authority for several reasons. First, it apparently overlooks the critical distinction between the business records and official records exceptions. The former requires testimony by the custodian or other qualified witness as to the "identity and the mode of [] preparation" of the record (Evid. Code, § 1271, subd. (c)), but the latter does not.

Second, the "state rap sheet" admitted in *Matthews* was not certified, and, according to the appellate court, was "an unlabeled computer printout." (229 Cal.App.3d at p. 934.) There is no indication the printout was generated by the CLETS system or any other statutorily authorized program. Here, the rap sheet is clearly identified as a "CLETS DATA BASE RESPONSE" and bears a certification from the Kern County District Attorney's Office that it was received from CLETS.

Also, the *Matthews* court did not discuss, and apparently did not consider, either judicial notice or the presumption that official duty was regularly performed, as those concepts might bear on the foundational issue.

We further note that the two cases cited in *Matthews* are clearly distinguishable.

The court in *In re Shannon C.* (1986) 179 Cal.App.3d 334 [224 Cal.Rptr. 516], while acknowledging that judicial notice may be taken of the foundational facts in some cases, refused to do so with respect to United States Navy records which revealed no information required by Evidence Code section 1280 and which only showed where a particular ship was scheduled to go, not where it actually went. (179 Cal.App.3d at p. 343.) *Behr* v. *County of Santa Cruz* (1959) 172 Cal.App.2d 697 [342 P.2d 987] held that the trial court properly refused to admit the official report of a fire ranger which was based primarily on statements made to him by other persons. (*Id.* at p. 704.)

We find no error in the court's admission of the CLETS rap sheet. In view of this conclusion we need not consider appellant's final claim that, absent the rap sheet, there was insufficient evidence to show he served prison terms for his prior convictions within the meaning of section 667.5, subdivision (b).

DISPOSITION

Judgment affirmed.

Best, P. J., and Franson, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied December 16, 1993. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.

---

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.