[No. B237354. Second Dist., Div. Five. Mar. 7, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID VEGA et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, parts I., II., III.B.1., 2. and IV. are certified for publication.

## COUNSEL

Marilyn Drath, under appointment by the Court of Appeal, for Defendant and Appellant Jose Vega.

Christine C. Shaver, under appointment by the Court of Appeal, for Defendant and Appellant David Vega.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TURNER, P. J.—**

### I. INTRODUCTION

A jury convicted two brothers, defendants, Jose and David Vega, of two counts of attempted voluntary manslaughter (Pen. Code,[1] §§ 664, 192, subd. (a)) (counts 1 and 2). In addition, defendants were each convicted of a single count of shooting at an occupied vehicle (§ 246) (count 3). The jury found the crimes were committed for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1).) The jury further found as to David[2]: a principal was armed (§ 12022, subd. (a)(1)) (counts 1 and 2); he personally used a firearm (§ 12022.5) (counts 1 and 2); and he inflicted great bodily injury (§ 12022.7, subd. (a)) (count 1). David was sentenced to prison for a life term with a 15-year minimum term consecutive to a determinate term of 21 years four months. Jose received a life term with a 15-year minimum term consecutive to a determinate term of nine years.

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

[2] Because defendants have the same last name, we refer to them by their first names.

In the published portion of the opinion, we discuss the question of the effect of section 1170.1, subdivision (f) on the imposition of a section 12022.5, subdivision (a) firearm enhancement on David on count 1. Further, as to David, we discuss the effect of section 1170.1, subdivision (g) on the count 1 section 12022.7, subdivision (g) great bodily injury enhancement. Finally, in the published portion of our opinion, we discuss as to Jose the order *staying* a section 186.22, subdivision (b)(1)(B) gang enhancement.

We affirm the judgments of conviction in their entirety. In the unpublished portions of the opinion, we modify the oral pronouncements of judgment in minor particulars. Upon remittitur issuance, as to Jose, we direct that the trial court either impose or strike the count 2 gang enhancement. As to David, the great bodily injury enhancement as to count 1 is to be imposed and then stayed.

## II. THE EVIDENCE

We view the evidence in the light most favorable to the judgment. (*People v. Griffin* (2004) 33 Cal.4th 1015, 1028 [16 Cal.Rptr.3d 891, 94 P.3d 1089]; *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].) On October 16, 2009, at 1:40 p.m., defendants drove to disputed gang territory. They were accompanied by a fellow gang member, Gascon Veliz. Mr. Veliz's sister Erica was Jose's girlfriend. Erica Veliz and Jose had a child together.

Mr. Veliz drove to the intersection of Hawthorne Boulevard and 111th Street. Defendants exited the automobile. Mr. Veliz remained in the car. He waited in a commuter parking lot across the street from a high school. Defendants attacked two rival gang members, Luis Rivera and Juan Crespo, as they walked down the street. Mr. Crespo later spoke to a gang investigator. Mr. Crespo said he was attacked from behind by unknown assailants. Mr. Crespo was struck in the back of his head. The four men engaged in a fistfight. When Mr. Rivera ran, defendants chased him. Mr. Rivera fell from the sidewalk into the street. David fired a .22-caliber revolver at Mr. Rivera four times. The shots were fired while Mr. Rivera lay on the ground. One bullet hit Mr. Rivera in the leg. A second bullet struck an occupied automobile that was stopped at a traffic light. It wedged in the passenger door. Had the bullet penetrated the door, it would have struck the passenger, Vandra Hilliard, in her torso.

The two victims ran. Mr. Rivera was "hobbling" as he fled. Defendants chased the victims, then ran to Mr. Veliz's waiting car. One minute and 14 seconds after Mr. Veliz's car entered the commuter parking lot, the three gang members drove away. David threw the gun from the car while still in the parking lot. Sheriff's deputies later recovered the handgun. When Mr. Veliz's car became stuck in traffic, defendants fled on foot. They were apprehended in the vicinity of the shootings by a deputy with a dog. The victims were briefly detained. No weapons were found on their persons.

The shooting took place across the street from a high school. Students were being dismissed at the time. There were many people in the area. Students were leaving and parents were picking them up. Deputy Larry Waldie testified he saw "a crowd of kids"; "kids were just all over the corners." However, no one saw how the fistfight started. One witness, Damian Hidalgo, saw defendants, Mr. Rivera and Mr. Crespo, arguing before the shooting. Mr. Hidalgo did not hear anybody shout any gang slogans.

David was 16 years old at the time of the shooting. Jose was 18. Two witnesses, Deputies Waldie and Ramon Gonzalez, identified Jose—not David—as the person who fired the shots. At trial, however, David testified he had the weapon.

Sergeant Mark Marbach testified concerning defendants' gang. Sergeant Marbach was a 20-year veteran of the sheriff's department. At the time of the present incident, he had been a gang investigator for nine years. Sergeant Marbach explained that a reputation for violence within the community and with rival gang members is important to a gang. In order to carry out their criminal activities, gangs need to be respected and feared. When community members fear a gang, they are reluctant to report crime or to testify against gang members. If rival gang members do not fear a gang, they will challenge and disrespect the gang. They will take over the gang's territory. Moreover, the necessary fear and respect is achieved through violent acts. Committing violent crimes in broad daylight in front of witnesses is an effective way to breed fear and garner respect. When rival gangs attempt to expand their territory, when they challenge and disrespect another gang, violence results. When an individual commits a violent act, it enhances both the individual's and the gang's reputation.

Territory is also important to gangs. Gangs will try to expand their borders. They will go into a disputed area and lay claim to it. Further, gang fights often lead to shootings. Sergeant Marbach testified: "As gang members, if you're going out and seeking rivals, it's very common that someone within

the group is going to be armed. If you're seeking out rival gang members, you're going into rival territory and it's reasonable to believe that those rivals will also be armed."

Sergeant Marbach was familiar with defendants' gang, which was a violent street gang. At the time of the present shootings, the gang had roughly 500 documented members. The gang's primary activities were murder, attempted murder, driveby shootings, assaults, fistfights, stabbings, robberies, witness intimidation, weapons possession, extortion, automobile theft and drug possession and sales. The present shooting took place in a disputed area marked by rival gang graffiti. Sergeant Marbach had investigated fights involving defendants' gang that led to shootings. It was common for members of defendants' gang to confront rival gang members, to chase them down and to shoot them. Around the time of the present crimes, Sergeant Marbach had investigated a similar case involving defendants' gang. A group of gang members became aware that rival gang members were in a particular area. They drove to that area and confronted the rival gang members. Defendants' gang exchanged slogans and challenges, then chased the rival gang members and shot one of them.

In response to hypothetical questions based on the facts of this case, Sergeant Marbach testified defendants committed the present offenses to benefit their gang. Sergeant Marbach based his opinion on the following. Defendants confronted and engaged in a violent altercation with rival gang members in broad daylight, in the presence of numerous witnesses. The incident occurred in defendants' gang's or in disputed territory. The crime had both individual and gang benefits. David used a weapon and shot a rival gang member. This bolstered David's individual status within the gang. The crime also reinforced the atmosphere of fear in the community. This fear allows the gang to carry on its illegal activities. And assaulting rival gang members bolstered the gang's reputation. It also served to claim the gang's territory.

### III.  DISCUSSION

#### A.   Sufficiency of the Evidence[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[*]See footnote, *ante*, page 1387.

## B. Sentencing

### 1. David's count 1—sentences for both the gang and firearm use enhancements

As to David, count 1, attempted voluntary manslaughter, was enhanced under both sections 186.22, subdivision (b)(1)(C) for promoting gang activity and 12022.5, subdivision (a) for firearm use. David argues the trial court erroneously imposed both the 10-year gang and the four-year firearm use enhancements. We respectfully disagree.

As noted, as to count 1, David was convicted of attempted voluntary manslaughter. Additionally, the jury found three relevant special allegations to be true: he personally used a firearm; the offense was committed for the benefit of a street gang; and he personally inflicted great bodily injury. The trial court imposed the midterm of four years for firearm use. In addition, the trial court imposed 10 years for the gang enhancement. Finally, as we will note, the trial court stayed the sentence for great bodily injury.

Count 1 is a violent felony because the firearm use and great bodily injury allegations were found to be true. (§ 667.5, subd. (c)(8) ["Any felony in which the defendant inflicts great bodily injury on any person other than an accomplice which has been charged and proved as provided for in Section 12022.7 . . . or any felony in which the defendant uses a firearm which use has been charged and proved as provided in subdivision (a) of . . . Section 12022.5 . . . ."]; *People v. Ruiz* (1999) 69 Cal.App.4th 1085, 1090 [82 Cal.Rptr.2d 139] [great bodily injury finding renders offense a violent felony]; *People v. Alvarado* (1982) 133 Cal.App.3d 1003, 1025 [184 Cal.Rptr. 483] [firearm use].) Count 1 is a violent felony for two reasons. To begin with, the firearm use allegation was found to be true. And, the jury sustained the great bodily injury allegation.

Having identified the violent nature of the offense, we now turn to the possible gang enhancements. Section 186.22, subdivision (b)(1) specifies three enhancements which may be imposed in addition to the sentence for the offense: "(b)(1) Except as provided in paragraphs (4) and (5), any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment

prescribed for the felony or attempted felony of which he or she has been convicted, be punished as follows: [¶] (A) Except as provided in subparagraphs (B) and (C), the person shall be punished by an additional term of two, three, or four years at the court's discretion. [¶] (B) If the felony is a serious felony, as defined in subdivision (c) of Section 1192.7, the person shall be punished by an additional term of five years. [¶] (C) If the felony is a violent felony, as defined in subdivision (c) of Section 667.5, the person shall be punished by an additional term of 10 years." It is this latter section 186.22, subdivision (b)(1)(C) 10-year gang enhancement that is at issue because the attempted voluntary manslaughter conviction is a violent felony.

For his contention that the trial court erroneously imposed both the four-year firearm use and the 10-year gang enhancements, David relies upon section 1170.1, subdivision (f) which states: "When two or more enhancements may be imposed for being armed with or using a dangerous or deadly weapon or a firearm in the commission of a single offense, only the greatest of those enhancements shall be imposed for that offense. This subdivision shall not limit the imposition of any other enhancements applicable to that offense, including an enhancement for the infliction of great bodily injury." David also relies upon the following analysis concerning section 1170.1, subdivision (f) in *People v. Rodriguez* (2009) 47 Cal.4th 501, 508–509 [98 Cal.Rptr.3d 108, 213 P.3d 647], where our Supreme Court held: "At issue here are the additional punishments that the trial court imposed, with respect to defendant's assaults on victims Miguel and Jose, under two different sentence enhancement provisions: section 12022.5's subdivision (a), and section 186.22's subdivision (b)(1)(C). These additional punishments comprised a total of 18 years and eight months—defendant's total prison sentence was 22 years and eight months. [Citation.] [¶] There is no question that the additional punishments imposed under section 12022.5's subdivision (a) for 'personally us[ing] a firearm in the commission of a felony,' fall squarely within the limiting language of section 1170.1's subdivision (f). This is why: The additional punishments totaling five years and four months imposed under section 12022.5's subdivision (a) for defendant's personal use of a firearm in each of the three assaults were, in the words of section 1170.1's subdivision (f), punishments 'for . . . using . . . a firearm in the commission of a single offense.' The additional punishments totaling 13 years and four months under section 186.22's subdivision (b)(1)(C), the criminal street gang provision, were likewise based on defendant's firearm use. Because two different sentence enhancements were imposed for defendant's firearm use in each crime, section 1170.1's subdivision (f) requires that 'only the greatest of those enhancements' be imposed." (Accord, *People v. Morgan* (2011) 194 Cal.App.4th 79, 84 [122 Cal.Rptr.3d 865] ["Briefly, in *Rodriguez*, our high court held that the trial court should not have imposed sentence enhancements both for the defendant's personal firearm use (§ 12022.5, subd. (a)) and

for committing a violent felony to benefit a criminal street gang (§ 186.22, subd. (b)(1)(C)), because both sentence enhancements relied on the defendant's firearm use and section 1170.1, subdivision (f) required that only the greatest of the enhancements could be imposed."]; *People v. Martinez* (2012) 208 Cal.App.4th 197, 199–200 [145 Cal.Rptr.3d 141].)

However, the analysis in *Rodriguez* is inapplicable. In *Rodriguez*, the jury had not returned a great bodily injury finding. Rather, in *Rodriguez*, the multiple sentencing issue arose because the jury found both the firearm use and section 186.22, subdivision (b)(1)(C) gang allegations to be true. And, the only reason the aggravated assault was a violent felony and, hence, subject to the 10-year gang enhancement, was because the firearm use finding was sustained. Here, even if no firearm use finding had been returned, the attempted voluntary manslaughter offense would still be a violent felony thereby triggering the 10-year gang enhancement. And this is why—because the great bodily injury finding made the attempted voluntary manslaughter offense into a violent felony. (§ 667.5, subd. (c)(8); *People v. Ruiz, supra*, 69 Cal.App.4th at p. 1090.) In *Rodriguez*, our Supreme Court emphasized the sole reason the defendant became eligible for the 10 year enhancement for participating in a gang was because he used a firearm, "Here, defendant became eligible for this 10-year punishment *only* because he 'use[d] a firearm which use [was] charged and proved as provided in . . . 12022.5.' " (*People v. Rodriguez, supra*, 47 Cal.4th at p. 509, original italics; see *People v. Robinson* (2012) 208 Cal.App.4th 232, 257 [145 Cal.Rptr.3d 364].) Thus, given the great bodily injury finding, nothing in section 1170.1, subdivision (f) or *Rodriguez* prevented the trial court from imposing both the firearm use and gang enhancements.

As discussed above, count 1, attempted voluntary manslaughter, was a violent felony because the jury sustained the section 12022.7, subdivision (a) great bodily injury allegation. (§ 667.5, subd. (c)(8).) Based on that finding, the trial court properly imposed a 10-year gang enhancement under section 186.22, subdivision (b)(1)(C). The trial court could not, however, also impose and leave unstayed the three-year great bodily injury enhancement under section 12022.7, subdivision (a). The trial court indicated imposition of the three-year great bodily injury enhancement would violate the multiple enhancement limitation in section 1170.1, subdivision (g). (*People v. Gonzalez* (2009) 178 Cal.App.4th 1325, 1331–1332 [101 Cal.Rptr.3d 135]; cf. *People v. Rodriguez, supra*, 47 Cal.4th at pp. 508–509.) We agree with the trial court's analysis in this regard. The trial court orally proceeded to stay the section 12022.7, subdivision (a) great bodily injury enhancement without initially imposing it. But, under California Rules of Court, rule 4.447, the trial court should have *imposed* and then stayed that enhancement. California Rules of

Court, rule 4.447 expressly requires the sentencing court to *impose* the aggregate term and then *stay* execution of the prohibited sentence on an enhancement. (*People v. McQueen* (2008) 160 Cal.App.4th 27, 36–38 [72 Cal.Rptr.3d 499]; *People v. Walker* (2006) 139 Cal.App.4th 782, 794, fn. 9 [43 Cal.Rptr.3d 257]; *People v. Lai* (2006) 138 Cal.App.4th 1227, 1244–1245 [42 Cal.Rptr.3d 444]; see *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1128–1129 [77 Cal.Rptr.3d 569, 184 P.3d 702].)

### 2. Stayed count 2 gang enhancement for Jose

For count 1, Jose received a determinate term of eight years in state prison. The eight-year term is calculated as follows. For committing attempted voluntary manslaughter, Jose received the midterm of three years. And the trial court imposed five additional years pursuant to section 186.22, subdivision (b)(1)(B). (David's gang enhancement was greater because he was convicted of a violent felony by reason of his personal firearm use or inflicting great bodily injury.) As to count 2, the trial court imposed one-third the midterm of one year for attempted voluntary manslaughter. However, as to count 2, the trial court orally stayed one-third the midterm for the gang enhancement. The trial court did not purport to utilize its powers to strike the additional term for the gang enhancement as permitted by section 186.22, subdivision (g), which we will discuss shortly.

■ As to count 2, the trial court did not have the authority to stay Jose's gang enhancement. First, we look to the language of section 186.22 to determine whether the enhancement should have been imposed; i.e., it was mandatory subject to being stricken. (*People v. Ahmed* (2011) 53 Cal.4th 156, 163 [133 Cal.Rptr.3d 856, 264 P.3d 822]; see *People v. Robinson, supra,* 208 Cal.App.4th at pp. 259–261.) As noted, the language of section 186.22, subdivision (b)(1) is mandatory, "Except as provided in paragraphs (4) and (5), any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the . . . attempted felony of which he or she has been convicted, be punished as follows . . . ." The statutory language is clear—absent a lawful reason not to do so (which we will discuss momentarily), the gang enhancement must be imposed. Second, the count 2 substantive offense, attempted voluntary manslaughter, is not subject to section 654. ■ Attempted voluntary manslaughter is a crime of violence for section 654 purposes because it was directed at separate victims, Mr. Rivera and Mr. Crespo. (*People v. Champion* (1995) 9 Cal.4th 879, 934–935 [39 Cal.Rptr.2d 547, 891 P.2d 93], disapproved on another ground in *People v. Combs* (2004) 34 Cal.4th 821, 860 [22 Cal.Rptr.3d 61, 101 P.3d 1007] [acts

of violence against separate victims may be separately punished]; *People v. Price* (1991) 1 Cal.4th 324, 492 [3 Cal.Rptr.2d 106, 821 P.2d 610] [same]); *People v. Perez* (1979) 23 Cal.3d 545, 553 [153 Cal.Rptr. 40, 591 P.2d 63].) Thus, the gang enhancement is also not subject to section 654. (*People v. Akins* (1997) 56 Cal.App.4th 331, 340 [65 Cal.Rptr.2d 338].) This analysis is consistent with the legislative intent expressed in section 186.22—to eradicate gang criminal activity by enhancing penalties therefore. (*People v. Gardeley* (1996) 14 Cal.4th 605, 609 [59 Cal.Rptr.2d 356, 927 P.2d 713]; *People v. Vy* (2004) 122 Cal.App.4th 1209, 1227 [19 Cal.Rptr.3d 402].) Thus, Jose's count 2 gang enhancement may not be stayed.

■ Upon remittitur issuance, the trial court retains the authority to strike Jose's count 2 gang enhancement pursuant to section 186.22, subdivision (g) which states, "Notwithstanding any other law, the court may strike the additional punishment for the enhancements provided in this section or refuse to impose the minimum jail sentence for misdemeanors in an unusual case where the interests of justice would best be served, if the court specifies on the record and enters into the minutes the circumstances indicating that the interests of justice would best be served by that disposition." As in connection with a determination to strike an enhancement pursuant to section 1385, subdivision (a), the minutes must state the circumstances justifying striking the additional term of imprisonment. Thus, upon remittitur issuance, the trial court must either impose or strike the gang enhancement pursuant section 186.22, subdivision (g).

3.–6.*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

## IV.  DISPOSITION

The judgments of conviction are affirmed. The count 1 sentence as to David is modified to *impose* and then stay the three-year great bodily injury enhancement under Penal Code section 12022.7, subdivision (a). Upon remittitur issuance, as to Jose, the trial court must either impose or strike the gang enhancement on count 2 pursuant to Penal Code section 186.22, subdivision (g). As to both defendants, the oral pronouncements of judgment are modified as specified in part III.B.5.–6. Upon remittitur issuance and

---

*See footnote, *ante*, page 1387.

resentencing as to Jose, the superior court clerk is to prepare amended abstracts of judgment as to both defendants. The superior court clerk is to deliver copies of the amended abstracts of judgment to the Department of Corrections and Rehabilitation. The sentences are otherwise affirmed in their entirety.

Armstrong, J., and Kriegler, J., concurred.

A petition for a rehearing was denied April 3, 2013, and on March 12, 2013, April 3, 2013, and April 9, 2013, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied July 10, 2013, S210462.