Filed 7/7/23  P. v. Montes CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B318207 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA358831 |
| v. | |
| ERICK MONTES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Renee F. Korn, Judge.  Reversed and remanded with directions, affirmed in all other respects.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri  and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Erick Montes appeals after a resentencing hearing. He first contends that the trial court failed to exercise its discretion under Senate Bill No. 567 (2021-2022 Reg. Sess.) (SB 567) when resentencing him on count 2, for assault with a semiautomatic firearm. However, appellant failed to object or seek clarification below, rendering this issue forfeited on appeal. Even if we were to reach the merits of appellant's argument, we would conclude that the record shows the court exercised its discretion.

Appellant also contends, and respondent Attorney General agrees, that the trial court erred by staying rather than striking or dismissing several gang and firearm enhancements. We agree this was error that resulted in an unauthorized sentence and thus is not forfeited on appeal. The trial court may stay an enhancement only when doing so is required by statute; it may not do so in the furtherance of justice or for other discretionary reasons. We accordingly remand with directions for the trial court to strike or dismiss rather than stay the Penal Code[1] section 186.22, 12022.5, and 667, subdivision (a) enhancements or punishments therefor. The matter is otherwise affirmed.

## FACTUAL BACKGROUND

This brief overview of the facts is based on those recited in the opinion in appellant's direct appeal by a different panel of this court, *People v. Montes* ((May 21, 2015, B254824) [nonpub. opn.].

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Around midnight on April 26, 2009, E.T.[2] picked up his teenage daughter, B.T., and two of her friends from their high school prom. After dropping off the second of B.T.'s friends around 1:15 a.m., E.T. needed to make a left turn to exit the friend's residential neighborhood, which happened to be in Rascals gang territory. E.T. saw a white BMW coming toward him and decided to let the car pass before turning.

Instead of passing E.T.'s car, the BMW stopped alongside it, with the BMW driver's open window directly across from E.T.'s open window. The driver, whom E.T. later identified as appellant, began yelling obscenities at E.T. Frightened, E.T. drove forward to pass the car and complete the left turn. He and B.T. then heard gunshots. Their car was riddled with approximately 13 bullets, and 21 nine-millimeter casings were later recovered from the scene. Ballistics analysis revealed that the casings came from two different semiautomatic firearms, though appellant was the only person E.T. and B.T. saw in the BMW. One of the bullets struck E.T. in the left leg, causing permanent damage and partial paralysis. B.T. was not physically injured.

At trial, evidence established that appellant was a member of the Toonerville gang, which was a rival of the Rascals. An expert opined that a hypothetical shooting mirroring the facts of the case would have been committed to further the gang and promote gang activity.

---

[2] We refer to the victims using initials to protect their privacy. (See Cal. Rules of Court, rule 8.90(b)(4).)

3

# PROCEDURAL HISTORY

## I. Charges

The People filed a four count-information against appellant on December 23, 2009.  Count 1 charged appellant with the attempted willful, deliberate and premeditated murder of E.T. (§§ 664, 187, subd. (a); count 1.)  Count 2 charged appellant with assaulting B.T. with a semiautomatic firearm (§ 245, subd. (b)), and included an allegation that appellant personally used a semiautomatic firearm (§ 12022.5, subd. (a)).  Count 3 charged appellant with shooting at an occupied motor vehicle (§ 246), and count 4 charged him with unlawful possession of a firearm by a felon with two prior convictions (former § 12021, subd. (a)(1)).

The information alleged that all four counts were committed for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members (§ 186.22, subd. (b)(1)(C) [counts 1-3], § 186.22, subd. (b)(1)(A) [count 4]), and counts 1, 2, and 3 were subject to sentencing under section 186.22, subdivision (b)(4).  The information further alleged as to counts 1 and 3 that a principal personally and intentionally discharged a firearm, proximately causing great bodily injury to E.T. (§ 12022.53, subds. (b)-(e)), and that appellant personally inflicted great bodily injury upon E.T. (§ 12022.7, subd. (a)).  The information additionally alleged that appellant suffered a prior strike conviction (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)), a prior serious felony conviction (§ 667, subd. (a)(1)), and one-year prison prior (§ 667.5, subd. (b)).

## II. Conviction and Sentence

Appellant proceeded to jury trial in July 2011.  The court declared a mistrial after the jury reported a deadlock of 11–1 in

4

favor of guilt. The People elected to retry appellant, and a second trial commenced in July 2012. The jury rejected appellant's alibi defense and found him guilty as charged. It also found all the enhancement allegations true, including the allegation that appellant personally used a firearm during the commission of the assault charged in count 2. Appellant waived his right to jury trial on the prior convictions and subsequently admitted them.

After the second trial, appellant began representing himself and filed a motion for new trial. The trial court, Judge Anne Egerton, heard and denied the motion on February 10, 2014 and sentenced appellant the same day. The court sentenced appellant to seven years to life on count 1, doubled to 14 years to life due to the strike. The court also imposed a consecutive sentence of 25 years to life for the section 12022.53, subdivision (d) enhancement, and imposed and stayed sentences on the other enhancements on count 1. It also imposed five years for the prior serious felony conviction, bringing appellant's total sentence on count 1 to five years plus 39 years to life. On count 2, the court selected the upper term of nine years "because of the victim's vulnerability and because Mr. Montes was on federal parole, essentially, at the time of the crime." The court doubled the sentence to 18 years due to the strike, and ordered it to run consecutively to the sentence on count 1. The court imposed a consecutive midterm sentence of four years for the section 12022.5 personal use enhancement, and additional consecutive terms of five years for the gang enhancement and prior serious felony convictions, bringing appellant's total sentence on count 2 to 32 years. The court imposed and stayed midterm sentences on counts 3 and 4 and their related enhancements.

A different panel of this court affirmed appellant's convictions on direct appeal. (*People v. Montes* (May 21, 2015, B254824) [nonpub. opn.].) Appellant did not challenge his sentence at that time.

## III. Resentencing

### A. Request for Recall and Resentencing

By letter dated August 10, 2018 and filed August 24, 2018, the Department of Corrections and Rehabilitation (CDCR) requested recall of appellant's sentence pursuant to former section 1170, subdivision (d) (subsequently renumbered to section 1170.03 and currently codified at section 1172.1). CDCR notified the court that *People v. Le* (2015) 61 Cal.4th 416 (*Le*) "held that a trial court is precluded from imposing both an enhancement for personal use of a firearm under Section 12022.5 (a)(1) and a serious felony gang enhancement under Section 186.22(b)(1)(B) when the offense qualifies as a serious felony solely because it involved firearm use." CDCR noted that both enhancements were applied to appellant's sentence on count 2. It recommended that the court recall appellant's sentence and resentence him.

### B. Notice of Hearing and Written Filings

On August 8, 2019, the trial court, Judge Renee Korn,[3] filed a notice of resentencing hearing. The court indicated that it had reviewed the available records and tentatively determined that the section 12022.5 enhancement on count 2 "should be stayed." The court set the matter for a hearing to give the parties an opportunity to be heard. It also added that the law regarding five-year prison prior enhancements under section 667,

---

[3] Judge Egerton, who presided over appellant's trial and sentenced him in 2014, was appointed to the Court of Appeal in 2017.

6

subdivision (a) had changed effective January 1, 2019, and invited the parties to present argument on that issue as well.

On December 20, 2019, appellant, through appointed counsel, filed a resentencing memorandum.  He asserted that changes in the law afforded the trial court discretion to strike both his five-year prison prior enhancements and the firearm enhancements, and requested that the court exercise its discretion in favor of striking the enhancements.  Appellant asked the court to "consider the progress he has made towards rehabilitation," and provided the court with numerous laudatory chronos and certificates of achievement he earned during his incarceration, as well as academic transcripts and a letter of recommendation from his political science professor.

The People filed a resentencing memorandum on January 7, 2020.  They conceded the applicability of *Le*, *supra*, 61 Cal.4th 416 and requested that the court strike the five-year sentence imposed under section 186.22, subdivision (b)(1)(B) and replace it with the high term of four years under section 186.22, subdivision (b)(1)(A).  The People also acknowledged that the court had the discretion to strike the five-year priors and firearm enhancements, though they made no express argument regarding the court's exercise of that discretion. Instead, they requested that the court continue the matter so they could present the court with a more complete picture of appellant's conduct while in custody.

Two days later, on January 9, 2020, appellant filed a letter to the court dated December 23, 2019.  In the letter, appellant stated he was "taking accountability for my actions and my participation in this crime," and admitted to driving the vehicle from which two other members of his gang shot at E.T. and B.T.

7

Appellant relayed various traumas he endured as a child and young adult, including the loss of two cousins to gang violence, the stillbirth of his son, and the death of his grandmother. Appellant stated that he formerly "wanted everyone to feel my pain," but recently began "taking an active role in my transformation" by participating in rehabilitative groups and services in prison. He stated that he was taking classes to earn an associate's degree and was doing well in his employment. Appellant asked the court to "take a look at the work I've been doing to better myself and take it into consideration when you resentence me."

The matter was continued several times, initially at the request of the parties but also due to the Covid-19 pandemic and the appointment of new counsel for appellant.

On January 19, 2021, appellant in propria persona filed a motion to dismiss all the enhancement allegations pursuant to Los Angeles County District Attorney George Gascón's Special Directives 20-08 and 20-14.

## C. Resentencing Hearing

After several more continuances, but no additional filings, the court held the resentencing hearing on January 31, 2022. By this point, several additional changes to the sentencing law had taken effect, including SB 567, which amended section 1170, subdivision (b)(2) to provide that where an offense has a sentencing triad, "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or

8

by the judge in a court trial." (§ 1170, subd. (b)(2).) The parties did not brief or seek permission to brief for the trial court this or any other change in the sentencing law that took effect after their resentencing memoranda were filed in late 2019 and early 2020.

At the outset of the lengthy hearing, the court commented that although the need for resentencing arose "because the law changed in the case of *People v. Le*," "once you open that door, all principles of sentencing come in." The court continued, "this is not a discussion by this court of using my discretion to lower the sentence that Judge Egerton provided. There will be a lowering of the sentence because the law, case law and actual law, has changed. I have discretion in places that Judge Egerton did not, but we're going to focus on that rather than on what she imposed at the time. That was her discretion. That's still discretionary. The court is going to follow her lead. She heard the trial, and I think that is an important concept." The court reiterated, "as far as what Judge Egerton said that was in her discretion, that's still in her discretion. We're not going to focus on that. Just as kind of rules for everybody to understand, this is really taking care of what has changed in the law since the time of her sentence to Mr. Montes back in 2014."

Following these remarks, the court expressly asked appellant's counsel if there was "anything that has been said here in court that you dispute, as far as how we're going to conduct resentencing." Counsel indicated that he thought it was unnecessary for the victims to make statements at the resentencing, because their previous statements were available to the court. He also stated, "I think the only thing that can be added post-sentencing is Mr. Montes's conduct while in custody. That's the only variable that I think has changed." Counsel did

not mention any of the numerous legislative changes to the sentencing law that had been made since 2014, including SB 567. He also did not make any comments after the court again stated, "Where I believe Judge Egerton made findings that are still in play, as far as midterm, low term, high term, and those things have gone unchanged, the court is going to make that finding. The court will specifically actually let the parties argue as to whether [section] 1385 as it was changed in January applies to this case. I don't believe it's retroactive. I'm certainly going to hear from the parties as to that."[4]

After this exchange, the court heard unsworn statements from E.T. and B.T. about the April 26, 2009 shooting and the continuing effects it had on their lives. It then heard sworn testimony from Sergeant Luis Vaca, a correctional officer at appellant's prison, about the dangers of cell phones in prisons and three occasions on which a contraband cell phone was found in appellant's cell. Vaca also testified about data downloaded from one of the recovered cell phones, which showed that appellant exchanged text messages with a known gang member and possessed a credit card and a Facebook account while incarcerated. The Facebook account included postings such as,

---

[4] Effective January 1, 2022, Senate Bill No. 81 (2021-2022 Reg. Sess.) (SB 81) amended section 1385 to require the trial court to dismiss sentencing enhancements "if it is in the furtherance of justice to do so" and would not endanger public safety. (See § 1385, subd. (c).) SB 81 also added to section 1385 a list of mitigating circumstances for the court to consider when exercising its discretion to dismiss enhancements. (See § 1385, subd. (c).) Under the statute, the changes effected by SB 81 "apply to all sentencings occurring after January 1, 2022." (§ 1385, subd. (c)(7).)

"FUCK THESE CROOKED ASS COURTS!!!!" and gang-related postings, such as a photo of a "choo train." The court admitted into evidence a report containing some of the postings. The parties also stipulated that appellant denied the shooting during trial and stated that he "probably [would] not" admit to it even if he committed it.

Prior to hearing argument, the court noted that the parties agreed appellant was entitled to a five-year reduction in his sentence on count 2. The court then stated that its tentative was to re-impose the 25-years-to-life section 12022.53, subdivision (d) enhancement on count 1, because "[t]he jury found him to be the shooter." On count 2, the court said it was inclined to "use my discretion to not sentence him" on the section 12022.5 enhancement. The parties' subsequent arguments focused almost exclusively on appellant's behavior in prison and whether it warranted reduction of his sentence.

Appellant's counsel argued that the court should depart from its tentative and strike the section 12022.53 enhancement on count 1. He asserted that appellant would still be serving a sentence of 25 years to life without the enhancement, "so it wouldn't be giving him a get-out-of-jail-free card." Instead, striking the enhancement "would just give him a carrot . . . to continue on the path he's been going." During the People's response, the prosecutor asked the court, "Given the ground rules that the court said, you're not going to go back and change Judge Egerton's sentencing, high term/low term. You're not doing that." The court responded, "I'm not." The People then argued that they did not think the court "can really do anything on count 2," particularly the section 12022.5 enhancement.

The court disagreed. It stated, "once the resentencing is open, the court can consider everything. For example, I can consider his behavior in state prison. It is something the court can consider." The court later reiterated this point multiple times.

The prosecutor contended that the court should not strike the five-year priors because appellant's illicit behavior in prison and the timing of his laudatory chronos suggested his rehabilitative efforts were not genuine. The court asked appellant's counsel if he wanted to be heard. Counsel argued that all change must begin sometime and the laudatory chronos were consistent with appellant's "classes and courses and whatnot." Counsel then stated, "That's it. Submitted."

The court then stated that it wanted to "talk about the changes to the law that became effective in 2022, so if there is an appellate decision regarding this sentencing here in court today, that the appellate court knows that I did review those changes to the law and considered them here in court for his sentencing." It continued, "I want to make it clear that this is the court's decision, that I am using what has changed in the law since the time he was sentenced, and I am going to consider the letter he wrote, I'm going to consider the classes he's taken, I am going to consider what has been presented. I'm also going to consider what's not been presented, the fact that certainly we don't have any information as to his behavior in CDCR for the entirety of the time period. In fact, we really have nothing as of 2020. [¶] I note, I am considering the fact that he had a cell phone on not one, but three occasions. The court does find that to be a violation, and a serious violation of the policies within state prison. [¶] Additionally, the court notes that Penal Code section

12

1385 has been changed considerably, but I note it's not retroactive. It is the first time, in all of the changes of the law that have been coming forth since August 2017, that the . . . Legislature has actually used the word[ ] 'retroactive.'"

The court did not identify SB 567 or section 1170 by name or number, but it continued: "The court notes that that section allows the court to – or provides that the People would have to present factors in aggravation to a jury to get the high term. That was not the law at the time his trials were done, and it's only been the law since January 1st of this year. The court is not going to apply it based upon that. The court is going to make its determinations really, in big part, on what Judge Egerton made her findings to."

Without further comment from the parties, the court provided another tentative. On count 1, it stated it planned to impose "the high term,"[5] doubled for the strike, and was "taking out the 186.22, but the court is sentencing him under 12022.53 (d)." The court explained that "Judge Egerton chose the correct application of 12022.53, and it is this court's determination that that indeed remains the correct firearms use that should be reflected against the defendant in this case."

Regarding count 2, the court stated that there was "a significant number of firing on that car [*sic*]. However, on the 12022.5, I have discretion, and I'm going to use that discretion to not impose the 12022.5 on count 2, because I believe it's subsumed in the 12022.53 [on count 1]. I think the 25-to-life on

_____

[5] Appellant correctly notes that there is no sentencing triad for attempted willful and premeditated murder; the prescribed sentence is life in prison with the possibility of parole after seven years. (See §§ 664, subd. (a), 3046, subd. (a)(1).)

13

that count really does in many ways include the firing on [B.T.] as well. So he will have a reduction in his sentence from the four years on the 12022.5 . . . ." The court further stated that it planned to double appellant's base sentences under the Three Strikes law, but "[b]ecause of the strike prior, the court is not going to impose the 667(a) priors. . . . I believe the remaining sentence in this case is still significant, still protects the community, but reflects our 2022 values, which are the values I have to abide by at this juncture."

Before formally pronouncing sentence, the court asked the parties if they wanted to say anything further. Both parties declined the opportunity.

On count 1, the court imposed the required term of seven years to life, doubled to 14 years to life due to appellant's prior strike. The court imposed an additional consecutive 25 years to life pursuant to section 12022.53, subdivision (d), but stated it was "staying the 12022.53 (b), the 12022.53 (c) in this case." The court also stayed the "667(a) prior," and "the 12022.7, as it was stayed at the time of his sentencing, and which is also within the new sentencing guidelines, that the defendant is only to be sentenced to one enhancement, that enhancement being 12022.53, along with the strike finding."

The court continued: "As to count 2, violation of Penal Code section 245 (b), assault with a semiautomatic weapon, on that count the court notes that I am imposing, as did Judge Egerton, the high term of nine years, doubled pursuant to 667(b) through (i) and 1170.12(a) through (e). I am using my discretion here as well, and if discretion changes on this, I'm using my discretion here now to find that that is appropriate. And that's for 18 years in state prison. [¶] The court notes that, again, the

14

186.22 as to count 1 and count 2 is stayed." The prosecutor interjected to ask for clarification, and the court reiterated that it was staying the section 186.22 enhancement on count 2. It continued, "The court is also staying the 12022.5 as to count 2, and the 667(a) – if I misspoke and said 677(a) [*sic*] on count 1, it's 667(a) on both, and it's stayed on count 1 and count 2." It clarified that appellant's overall sentence was 39 years to life on count 1, and 18 years on count 2. This was a reduction of 19 years from appellant's original sentence.

On count 3, the court imposed and stayed the midterm, and on count 4 it imposed the midterm of two years concurrently. The prosecutor asked if the court was going to incorporate Judge Egerton's findings and sentence selections on the stayed counts, "with the exception of what the court has specifically changed?" The court responded, "Correct, and indicating where I've stayed portions of the sentence." Appellant's counsel made no comment. The court directly asked appellant if he had any questions, and he said no.

Appellant timely appealed.

## DISCUSSION

### I.     Exercise of Discretion

Appellant contends that the trial court "failed to exercise its discretion as to imposing sentence on count two under SB 567's amendment to section 1170, subdivision (b) at the January 31, 2022 resentencing hearing." He argues that "even though the court said it was using its discretion to impose the nine-year upper term . . ., it appears the court stayed with the trial court's sentence on count two because SB 567's amendment to section 1170, subdivision (b) was not in effect in 2014." He asserts that the court should have "provided further explanation as to why it

15

was or was not exercising its discretion pursuant to the new laws as of 2022."

Appellant did not raise any of these objections in the trial court, even after the trial court made remarks regarding SB 567 and invited counsel to comment on those remarks and its tentative ruling. Appellant could have, but did not, request clarification, make any legal argument, or otherwise object to the sentence on count 2. His failure to do so forfeited the appellate challenge here. (See *People v. Anderson* (2023) 88 Cal.App.5th 233, 241-242, review granted Apr. 19, 2023, S278786 [finding forfeiture where appellant failed to raise SB 567]; *People v. Brach* (2002) 94 Cal.App.4th 571, 577, quoting *People v. Scott* (1994) 9 Cal.4th 331, 354 ["Claims of error relating to sentences 'which, though otherwise permitted by law, were imposed in a *procedurally* or *factually* flawed manner' are waived on appeal if not first raised in the trial court."].)

Even if the argument were preserved, the record indicates that the court recognized and exercised its discretion when imposing sentence on count 2. The court expressly stated that it had reviewed the recent changes to the sentencing law and "considered them here in court for his sentencing." It also remarked several times throughout the hearing that the jury found appellant was the shooter, which is a circumstance in aggravation that may be used to impose an upper-term sentence. (See Cal. Rules of Court, Rule 4.21(a).) The court stated that although it imposed the same high term sentence Judge Egerton originally imposed, "I am using my discretion here as well, and if discretion changes on this, I'm using my discretion here now to find that that is appropriate." Appellant suggests the court was "not completely aware it had discretion to apply SB 567's

16

amendment to section 1170, subdivision (b) to count two," but these comments indicate the opposite.[6] To the extent there was any confusion in light of other comments the court made, appellant had an obligation to seek clarification or otherwise bring the issue to the court's attention.

## II.    Stay of Enhancements

Appellant also contends the court erred by staying rather than striking enhancements under sections 186.22, 667, subdivision (a), and 12202.5.[7]  Respondent largely agrees, as do we.

Section 1385 authorizes the trial court to "strike or dismiss an enhancement" or "the additional punishment for that enhancement in the furtherance of justice."  (§ 1385, subd. (b)(1).)  "The trial court has no authority to stay an enhancement, rather than strike it—not, at least, when the only basis for doing either is its own discretionary sense of justice."  (*People v. Lopez* (2004) 119 Cal.App.4th 355, 364; see also *People v. Bay* (2019) 40 Cal.App.5th 126, 139.)  "Rather, the only authority for staying an enhancement is California Rules of Court, rule 4.447, which applies when 'an enhancement that otherwise would have to be either imposed or stricken is barred by an overriding statutory prohibition. In that situation—and that situation only—the trial court can and should stay the enhancement.'"  (*People v. Bay*,

---

[6] Appellant contends only that the court failed to exercise its discretion.  We offer no opinion on whether the court exercised its discretion appropriately.

[7] In his opening brief, appellant also contends the court erred by staying the section 12022.7 enhancement on count 1.  In his reply brief, however, he agrees with respondent that this enhancement properly was stayed.  (See *People v. Vega* (2013) 214 Cal.App.4th 1387, 1395-1396.)

*supra*, 40 Cal.App.5th at p. 139, quoting *People v. Lopez, supra*, 119 Cal.App.4th at p. 365.)

Here, the court indicated that it was using its discretion to "stay" the section 667, subdivision (a) five-year prior enhancements on counts 1 and 2 and the section 186.22 and 12022.5 enhancements on count 2, giving appellant a resultant sentence reduction of 19 years. The court had the discretion to reduce appellant's sentence, but not by staying the enhancements. Instead, it was required to either strike the enhancements or the punishments therefor. We remand with directions for the court to either strike these enhancements or the punishments for these enhancements.

Respondent also asserts that there is some ambiguity as to whether the court intended to stay the section 186.22 enhancement on count 1. We disagree. The court stated that it was staying the section 186.22 enhancement on both counts 1 and 2, and these stays are reflected in the minute order and abstract of judgment. Respondent notes that the court also said, "I'll stay it as to count 2," and "that will make it clear," but those comments do not implicate or change its earlier comments regarding count 1. Accordingly, the court shall also either strike this enhancement or the punishment therefor on remand.

## DISPOSITION

The matter is reversed in part and remanded with directions for the trial court to strike or dismiss the enhancements under sections 186.22, 12022.5, and 667, subdivision (a), or the punishments therefor. The superior court clerk is to deliver copies of the amended abstracts of judgment to the Department of Corrections and Rehabilitation. The matter is otherwise affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


CURREY, ACTING, P.J.


ZUKIN, J.*

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.